IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. CIV S-09-0600 FCD EFB PS |
| vs. | |
| TERESA MARTY, dba ADVANCED FINANCIAL SERVICES, LLC, | ORDER AND FINDINGS AND RECOMMENDATIONS |
| Defendant. | |
| _____/ | |

This matter was before the court on July 15, 2009, for hearing on the government's motion for a preliminary injunction.[1] Plaintiff, the United States, was represented by John Monroe, Trial Attorney, U.S. Department of Justice, Tax Division. Defendant, Teresa Marty, d/b/a Advanced Financial Services, LLC, appeared and represented herself. After consideration of the moving and opposing papers and the argument at the hearing, and for the reasons set forth below, the court recommends that plaintiff's motion be granted.

////

---

[1] This case is before the undersigned pursuant to E. D. Cal. L. R. 72-302(c)(21), and 28 U.S.C. § 636(b)(1). Plaintiff's motion for preliminary injunction is referred to the undersigned for findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(B).

1

BACKGROUND

On March 4, 2009, plaintiff filed the underlying complaint seeking to enjoin defendant from engaging in alleged violations of the Internal Revenue Code. Defendant is engaged in the business of preparing tax returns that allegedly claim fraudulent refunds. Plaintiff has shown that the Internal Revenue Service ("IRS") has received at least 110 fraudulent federal income tax returns prepared by Marty in 2008 and 2009. Those returns resulted in at least $6.9 million in erroneous refunds to Marty's "clients" and over $26 million in fraudulent refunds claimed by her clients. Pl.'s Mot. for Prel. Inj., Exs. in Supp. Thereof, Henline Decl. Her method for this scheme is to claim on the clients' tax returns, as federal tax withheld, the amount of the clients' debt and payments to creditors rather than the amount actually withheld on behalf of the clients. The result is a grossly inflated amount reported on the clients' form 1040 as withheld federal taxes. *Id.*

Plaintiff's instant motion for preliminary injunction is made pursuant to 26 U.S.C. § 7402 (action to enforce internal revenue laws), 26 U.S.C. § 7407 ("action to enjoin tax return preparers"), and 26 U.S.C. § 7408 ("action to enjoin promoters of abusive tax shelters").

DEFENDANT'S OPPOSITION

In response to the motion, defendant has filed several documents challenging the jurisdiction of this court, and the authority of the United States to pursue this action.[2] *See*, *e.g.*, Dckt. No. 13 (entitled "(Alleged) Defendant's Answer; Objection and Motion for Order for Ratification of Commencement; Motion for Dismissal with Prejudice"), No. 14 ("Mandatory Judicial Notice"), No. 19 ("Objections"), No. 28 ("Objections"), and No. 31 ("Declaration").

////

////

---

[2] Contrary to defendant's assertions, jurisdiction is conferred by 28 U.S.C. §§ 1340 and 1345, and 26 U.S.C. §§ 7402(a), 7407, and 7408. Additionally, venue is proper pursuant to 28 U.S.C. § 1391.

Defendant's arguments include the assertion that the United States may not pursue an action on behalf of the IRS; that "internal revenue" does not include "income;" and that the IRS and the United States District Courts "are willfully co-operating under a collusive misapplication of internal revenue BATF [Bureau of Alcohol, Tobacco and Firearms] administrative and procedural regulations in a conspiracy of silence to institute administrative and jurisdictional frauds under color of law, in criminal violation of 18 U.S.C. §§ 241, 242" (criminal statutes which provide no private right of action), Def.'s Objs., Dckt. No. 28, at p. 4.  The court construes these filings as defendant's statements in opposition to the present motion, and in support of defendant's arguments made at the hearing on this matter.  The court has duly considered the several statutes upon which defendant (and plaintiff) relies (and for which defendant has unnecessarily sought "judicial notice").[3]  The court has reviewed defendant's contentions and, for the reasons that follow, finds them without merit.

PRELIMINARY INJUNCTION STANDARDS

"The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'"  *Stormans, Inc. v. Selecky*, ___F.3d. ___, 2009 WL 1941550 at *13 (9th Cir. July 8, 2009) (*quoting Winter v. Natural Res. Def. Council, Inc*., ___ U.S. ___, 129 S.Ct. 365, 375-76 (2008)).  However, the general requirements for equitable relief are tempered by the specific criteria set forth in the internal revenue statutes relied upon here which expressly authorize preliminary injunctive relief.  *See, e.g., United States v. Estate Preservation Svcs,* 202 F.3d 1093, 1098 (9th Cir. 2000) ("[t]he traditional requirements for equitable relief need not be satisfied since Section 7408 expressly authorizes the issuance of an injunction");

---

[3] Judicial notice may be taken of both adjudicative facts, Fed. R. Evid. 201, and legislative facts, which includes facts supporting legislative history and construction, *see, e.g.*, *Korematsu v. United States*, 584 F. Supp. 1406, 1414 (N. D. Cal. 1984), but not the literal wording of the statutes themselves.

3

*United States v. Reddy,* 500 F. Supp.2d 877, 881 (N.D. Ill. 2007) ("[b]ecause IRC §§ 7407 and 7408 set forth the criteria for injunctive relief, the United States need only meet those criteria, without reference to the traditional equitable factors, for an injunction to issue under these sections" (citation and internal quotation omitted)).

Title 26 U.S.C. Section 7402 provides for entry of a preliminary injunction upon the showing by the United States that such an order "may be necessary or appropriate for the enforcement of the internal revenue laws."[4]  26 U.S.C. § 7402(a).  Section 7407 of Title 26 U.S.C. provides for entry of a preliminary injunction prohibiting a party from acting as an income tax return preparer where the United States shows a likelihood of success on the merits of a claim "that [defendant] has continually or repeatedly engaged in [proscribed] conduct . . . , and that an injunction prohibiting such conduct would not be sufficient to prevent such person's interference with the proper administration of this title."  26 U.S.C. § 7407 (b)(2).  The conduct proscribed by this statute includes conduct that is "subject to penalty under section 6694 ['understatement of taxpayer's liability by income tax return preparer'] or 6695 [obligations and responsibilities of tax preparer]," and "any other fraudulent or deceptive conduct which substantially interferes with the proper administration of the Internal Revenue laws."  26 U.S.C. § 7404(b)(1)(A), (D).  Under section 7408, the United States must demonstrate a likelihood of success on the merits "(1) that [defendant] has engaged in any specified conduct [conduct subject to penalty under §§ 6700 and/or 6701], and (2) that injunctive relief is appropriate to prevent recurrence of such conduct."  26 U.S.C. § 7408(b), (c).  Section 6700 proscribes, *inter alia*, the promotion of abusive tax shelters, while section 6701 proscribes aiding and abetting

---

[4] The court does not address Section 7407's "may be necessary" standard in light of *Winter v. Natural Res. Def. Council, Inc.*, 129 S.Ct. at 375-76 (Ninth Circuit's former standard of mere "possibility" of irreparable harm held too lenient) as the court specifically finds that the injunction sought here is necessary for the government to enforce the revenue laws as they pertain to the tax fraud scheme in question. Specifically, as discussed below, the court finds that absent an injunction the government's ability to enforce the tax laws will be irreparably harmed by the continued filing of numerous fraudulent claims for refunds.

4

understatement of tax liability.

As discussed below, the court finds that preliminary injunctive relief is necessary here for the United States to enforce the internal revenue laws, as well as to halt the preparation and filing of further fraudulent tax documents and claims.

ANALYSIS

Here, the government has shown that Defendant Teresa Marty operates a business in Placerville, California, under the name Advanced Financial Services, LLC, preparing tax returns for others in exchange for compensation. Pl.'s Mot. for Prel. Inj., Ex. is Supp. Thereof, Decl of Shauna Henline,[5] at ¶¶ 3-5. Marty is an Enrolled Agent in the State of California, and claims to be a "Certified Wealth Preservation Planner," and "Certified Asset Protection Planner." *Id*., at ¶ 5. In 2008 and 2009, Marty, individually and doing business as Advanced Financial Services, LLC, prepared and filed fraudulent tax returns (IRS Form 1040) for the tax years 2007 and 2008, and fraudulent amended tax returns (IRS Forms 1040X) for previous years, and prepared and filed with the IRS other frivolous documents on behalf of others in exchange for compensation. *Id*., at ¶ 6.

In particular, Marty promotes a tax-fraud scheme that involves filing fraudulent tax returns and other frivolous documents with the IRS on behalf of her customers. *Id*., at ¶¶ 6, 8. The returns Marty prepares for others fabricate the amount of tax withheld on behalf of her customers. The false reporting to the IRS of the tax withheld on her customers' returns results in fraudulent refund claims by those customers in amounts as large as $2.7 million per customer. *Id*., at ¶ 12. In support of these fraudulent refund claims, Marty prepares and files with the IRS false Forms 1099-OID. *Id*., at ¶¶ 8-13. Form 1099-OID is a form document used to report a type of income referred to as Original Issue Discount (hereafter "OID") income, which is a

---

[5] Shauna Henline is an IRS Senior Technical Advisor assigned to the Ogden, Utah Frivolous Return Preparer Program, who investigated the preparation and filing of returns prepared by defendant Teresa Marty and Advanced Financial Services. Pl.'s Mot. for Prel. Inj., Exs. in Supp. Thereof, Henline Decl., at ¶¶ 2-3.

1  reportable form of taxable interest based on the difference between the maturity and issuance
2  prices of a debt instrument.  These forms, prepared by Marty, falsely state that her customers
3  issued debt instruments that generated OID income or that her customers purchased debt
4  instruments that generated OID income.  *Id.*  The forms are claimed to be issued or received by
5  her customers to or from a creditor(s) of the customer, usually a credit card company or a
6  mortgage company.  They falsely report "original issue discount" income in an amount that
7  appears to be needed to satisfy a debt (usually a mortgage, car loan, or credit card debt) owed by
8  the customer to the creditor.  These forms also report tax withholding for the full amount of the
9  fraudulent "original issue discount."  *Id.*

10  Marty then prepares the customer's IRS Form 1040 so as to claim the total amount of the
11  false "original issue discount" and false withholding.  The result is an inflated tax liability for the
12  customer, but with a huge false refund claim, oftentimes exceeding $200,000.  *Id.*  Marty's
13  scheme fraudulently reports taxes withheld, then claims refunds based on the non-existent
14  withholding.  *Id.*  The returns that she submits on behalf of her customers falsely claim that the
15  customer withheld the total amount listed on a fraudulent Form 1099-OID, which reflects the
16  total amount of debt the customer owes to his/her creditor(s).  *Id.*  Thus, the apparent purpose of
17  the fraudulent IRS Forms 1040 and IRS Forms 1099-OID is to request fraudulent refunds by
18  accessing a non-existent treasury account.  *Id.*  Consequently, Marty's customers fail to file
19  proper federal income tax returns and falsely claim tax refunds to which they are not entitled.  *Id.*

20  The need for preliminary injunctive relief is readily apparent.  Marty has repeatedly and
21  successfully induced many of her customers to file false or fraudulent claims for tax refunds and,
22  unless restrained, will continue to do so.  The IRS has identified approximately 110 returns that
23  Marty prepared and filed in 2008 that utilize Forms 1099-OID to generate fraudulent refund
24  claims.  These fraudulent forms generally report that the full amount of the OID, purportedly
25  generated from checking accounts, vehicle loans, credit card debt/line of credit, and/or mortgage
26  loans, was withheld.  Henline Decl., at ¶ 16.

For example, in 2008, Marty prepared a 2007 Form 1040X (amended return) for Marion and Pamela Harris, for the purpose of reporting Form 1099-OID income that was not included on their original 2007 Form 1040.  Marion and Pamela Harris listed their occupation on their amended 2007 return as "authorized representatives."  On the Harrises' amended 2007 return that Marty prepared, she reported $620,000 of "other income" (Line 21) that was purportedly a result of OID paid to the Harrises in 2007.  Marty falsely claimed that the full amount of the OID was withheld for federal taxes.  On the Form 1099-OID attached to Marion and Pamela Harris' amended 2007 Form 1040X, Marion Harris is listed as the payer of the original-issue discount (OID) resulting from a debt instrument titled "promissory note."  According to the 1099-OID, Harris paid original-issue discount in the amount of $620,000 to Wells Fargo Bank, of which $620,000 in federal income tax was withheld.  According to the false Form 1099, the recipient of the OID and beneficiary of the withheld tax was Wells Fargo Bank, not Marion Harris.  Even if one assumes the Form 1099-OID issued by Marion Harris to Wells Fargo was legitimate, Marty improperly included $620,000 of income and withholding on the Harrises' amended 2007 federal income tax return.  Submitted along with the Harrises' amended 2007 federal income tax return was a false Form 56, "Notice Concerning Fiduciary Relationship," that falsely names Henry Paulson ("dba Secretary of the Treasury and any and all successors") as the customers' fiduciary debtor.   Henline Decl., at ¶¶ 18-26.

Another example is Marty's filing, in 2008, of a 2007 Form 1040 for Charles and Kathleen Barrett of Hotchkiss, Colorado.  Marty claimed a fraudulent refund request on the Barretts' 2007 federal income tax return in the amount of $217,615.  This fraudulent refund request was based on fabricated withholding reported on Forms 1099-OID that Marty prepared for the Barretts, wherein she falsely stated that the Barretts issued OID to several of their creditors.  This fabricated OID was then reported as income on the Barretts' 2007 Form 1040, which falsely reported that the full amount of the OID was withheld for federal income taxes.

////

7

Marty sent a document to the Barretts to explain how her scheme worked, and which included the following claims.  She advised that:

> (a.) a person may use a Form 1099-OID to obtain a tax refund for the amount that person has paid on his/her mortgage, car loans, insurance, utilities, medical bills, and tuition expenses;
> (b.) a person may satisfy his/her tax liabilities by filing IRS Forms 1099, 1096, 1040V, and 1040, which grant a person access to his/her treasury account that was funded at his/her birth;
> (c.) the value of a person's treasury account is based upon his/her birth weight in gold times an unknown multiplier;
> (d.) wages are not included in a person's taxable income;
> (e.) A person may satisfy a debt to a private creditor by issuing a Form 1099-OID for the amount of the debt to the creditor; if a creditor does not honor the Form 1099-OID, that creditor has committed sedition; and
> (f.) IRS notices to taxpayers for unpaid tax liabilities are in reality attempts to give that taxpayer a refund.

*See* Pl.'s Mot. for Prel. Inj., Exs. in Supp. Thereof, Decl. of Charles Barrett, Dckt. No. 8-7, at ¶¶ 1-29.

The total amount of refunds requested on the approximately 110 returns prepared and/or filed by Marty in 2008 that request refunds based on fraudulent Forms 1099-OID, is approximately $26.2 million. Henline Decl., at ¶¶ 6, 12, 83. As of February 11, 2009, Marty had prepared at least 24 federal income tax returns in 2009.  Of these 24 returns, 14 contain fraudulent refund requests based on frivolous IRS Forms 1099-OID. *Id.*, at ¶ 17.

The scheme employed by Marty appears to be part of a growing trend among tax protestors to file false and frivolous tax returns and Forms 1099-OID with the IRS and courts in an attempt to escape their federal tax obligations and to fraudulently obtain money from the U.S. Treasury. Henline Decl., at ¶ 10.  In response to Marty's "services," her customers have failed to file proper federal income tax returns, thus depriving them of proper tax refunds, or depriving the United States of tax revenue.  Marty's fraudulent tax return preparation has resulted in the IRS's issuance of at least $6.9 million in erroneous payments to her customers. *Id.*, at ¶78.

In addition to the lost revenue, the government has incurred the expense of conducting the investigation of Marty's tax preparation services, and responding to and processing the

frivolous documents she has filed or caused filed with the IRS. *Id*., at ¶ 77. Moreover, the false Forms 1099-OID submitted with the returns of Marty's customers may result in the assessment of erroneous penalties against creditors identified in the false Forms 1099-OID for failing to timely submit those forms to the IRS. *Id*., at ¶ 80. The fraudulent returns prepared and filed by Marty are likely to result in the issuance of erroneous notices of federal tax liens or levies and tax deficiencies to public officials identified in Marty's documents. *Id*., at ¶ 79.

The government has established a strong likelihood of success on the merits of its claim that Teresa Marty, doing business as Advanced Financial Services, LLC, has violated, and continues to violate, several provisions of the Internal Revenue Code. She has repeatedly prepared and filed federal tax returns that understate her customers' tax liabilities, based on fraudulent claims, and has thus engaged in conduct subject to penalty under 26 U.S.C. § 6694, and therefore subject to injunctive relief pursuant to 26 U.S.C. § 7407. Her understatement of her customers' tax liabilities, based on fraudulent claims, is also subject to penalty under 26 U.S.C. § 6701, and therefore plainly warrants injunctive relief pursuant to 26 U.S.C. § 7408. She has repeatedly prepared and filed federal tax returns that are based on a fraudulent and abusive tax shelter theory promoted by defendant, and which is dependent on the submission of fraudulent documents to the IRS, thus engaging in conduct subject to penalty under 26 U.S.C. § 6700, and therefore warranting injunctive relief pursuant to 26 U.S.C. § 7408. Her conduct continues to substantially interfere with the administration and enforcement of the internal revenue laws, and satisfies the requirements for preliminary injunctive relief pursuant to 26 U.S.C. § 7402(a).

Finally, the court finds that the United States is likely to suffer irreparable harm in the absence of preliminary injunctive relief and that the balance of equities clearly tips in favor of the United States. As noted above, defendant's conduct in preparing and filing fraudulent tax documents for her customers has significantly impeded the governments' enforcement of the tax laws and has placed in legal jeopardy those customers who have participated, and continue to

participate, in her scheme.  Entry of preliminary injunctive relief will strongly promote the public interest in halting the illegal scheme.

Finally, defendant requested at the hearing that any injunction be stayed for a period of 60 days to enable her to complete the tax returns of long-term clients.  For the reasons set forth above, that request must be denied.

CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that the government's motion for a preliminary injunction be granted and that defendant Teresa Marty, individually, and doing business as Advanced Financial Services, LLC, and any person or entity acting directly or indirectly in concert with defendant and/or her business, be enjoined pending the litigation of this action from engaging in any of the following conduct:

1. Acting as a federal tax return preparer; preparing or filing for other persons or entities any federal tax returns, amended returns, or other tax forms; providing any federal tax forms to other persons or entities, and notarizing or signing any federal tax forms, certificates of service or similar documents, on behalf of, or submitted by, other persons or entities; advising any other person or entity concerning federal tax matters; and representing any other person or entity before the IRS.

2. Organizing, promoting or selling any abusive tax shelter, plan or arrangement that advises or assists taxpayers to understate or evade the assessment or collection of their correct federal tax, or is otherwise premised on any deceptive, fraudulent or false representation.

3. Making any deceptive, fraudulent or false claim, including any understatement of liability or reliance on an abusive tax shelter, in her own federal income tax return, amended return or upon any other federal tax form.

////

////

////

IT IS ALSO RECOMMENDED that defendant Teresa Marty be required to:

1. Within 45 days of the filing date of the court's preliminary injunction order, provide to counsel for the United States a complete list of all persons and entities who have purchased any tax product, service or advice from defendant within the past three years.

2. Within 45 days of the filing date of the court's preliminary injunction order, send to all persons who have purchased any tax product, service or advice from defendant within the past three years, an executed copy of the court's order with a cover letter agreed to by counsel for the United States; and within 10 days thereafter, file with the court a sworn certificate stating that she has complied with this requirement.

3. Within 30 days of the filing date of the court's preliminary injunction order, remove all current content from her websites and replace it with a copy of the Court's preliminary injunction order; and within 10 days thereafter, file with the court a sworn certificate stating that she has complied with this requirement.

IT IS FURTHER RECOMMENDED that defendant's request for a stay of these proceedings be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within ten days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

////
////
////
////

11

Finally, IT IS HEREBY ORDERED that the parties shall file their cross–motions for summary judgment on or before September 14, 2009;[6] plaintiff shall set a date for hearing that is in compliance with the notice requirements of Local Rule 78-230; and, opposition and reply briefs shall be filed in compliance with the timing requirements of Local Rule 78-230.

DATED: July 29, 2009.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

---

[6] All factual recitations set forth in the cross-motions for summary judgment, *and* any proposed order submitted in support thereof, shall be succinctly stated and include all appropriate citations to the factual record.

12