IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

      Plaintiff,

    vs.

TERESA MARTY, dba ADVANCED
FINANCIAL SERVICES, LLC,

      Defendant.

_____/

No. CIV S-09-0600 FCD EFB PS

ORDER AND
FINDINGS AND RECOMMENDATIONS

     This action, filed pursuant to Sections 7402, 7407, and 7408 of the Internal Revenue Code, proceeds before the undersigned pursuant to Eastern District of California Local Rule ("Local Rule") 302(c)(21) and 28 U.S.C. § 636(b)(1).  Presently before the court is plaintiff's motion for summary judgment.  After full briefing the motion was submitted pursuant to Local Rule 230(g).  Also before the court are defendant's application to proceed *in forma pauperis*, and a letter submitted by defendant which challenges an earlier court decision to construe her purported "counterclaim" as an objection to findings and recommendations.  Having reviewed all submitted papers, the court recommends that plaintiff's motion for summary judgment be granted, that defendant's letter be construed as a request for reconsideration, and that the request for reconsideration be denied.  The court also orders defendant to file a further affidavit in support of her *in forma pauperis* application.

I.      BACKGROUND

On March 4, 2009, plaintiff filed the underlying complaint for a permanent injunction prohibiting defendant from engaging in alleged violations of the Internal Revenue Code.  Dckt. No. 1.  The complaint alleges that defendant is engaged in the business of preparing tax returns that claim fraudulent refunds and/or the satisfaction of debts based on deceptive Internal Revenue Service ("IRS") Forms 1099-OID (used to report "Original Issue Discount" income, a reportable form of taxable interest based on the difference between the maturity and issuance prices of a debt instrument), and fabricated treasury accounts purportedly created on behalf of each citizen.

On March 17, 2009, plaintiff moved for a preliminary injunction pursuant to 26 U.S.C. § 7402 (action to enforce internal revenue laws), 26 U.S.C. § 7407 (action to enjoin tax return preparers), and 26 U.S.C. § 7408 (action to enjoin promoters of abusive tax shelters).  Dckt. No. 6.  The undersigned heard argument on the motion for a preliminary injunction on July 15, 2009, Dckt. Nos. 32, 37, and on July 29, 2009, issued findings and recommendations in favor of plaintiff.  Dckt. No. 34.

On August 6, 2009, defendant filed an "affidavit and counterclaim," and on August 31, 2009, the district judge construed the "affidavit and counterclaim," along with several of defendant's other filings as objections to the July 29, 2009 findings and recommendations.[1] Dckt. No. 45.  The district judge then adopted the findings and recommendations in full, granted plaintiff's motion for a preliminary injunction, and enjoined defendant from, *inter alia*, preparing, providing, notarizing, signing, filing, or advising about tax returns or other tax forms for other persons or entities; organizing, promoting, or selling any abusive tax shelter, plan or arrangement that advises or assists taxpayers to understate or evade the assessment or collection of their correct federal tax, or is otherwise premised on any deceptive, fraudulent, or false

---

[1]  As a result, the district judge denied plaintiff's motion to dismiss defendant's counterclaim as moot.  Dckt. No. 45 at 2.

1  representation; and making any deceptive, fraudulent, or false claim, including any

2  understatement of liability or reliance on an abusive tax shelter, in her own federal income tax

3  return, amended return or upon any other federal tax form.  *Id.*

4  II.  <u>MOTION FOR SUMMARY JUDGMENT</u>

5       Plaintiff now moves for summary judgment against defendant and requests the entry of a

6  permanent injunction pursuant to 26 U.S.C. §§ 7407, 7408, and 7402.  Dckt. No. 48.  Plaintiff

7  argues it "is entitled to summary judgment because the undisputed facts . . . establish that

8  [defendant] has repeatedly and continually prepared tax returns containing fraudulent requests

9  for refunds and that a permanent injunction barring her from preparing tax returns for others is

10  necessary and appropriate."  Dckt. No. 50 at 4.

11       Defendant opposes plaintiff's motion, but rather than dispute any of plaintiff's factual

12  assertions or evidence, she asserts a variety a frivolous arguments disputing the standing of the

13  United States to enforce internal revenue statutes in question and the court's authority to

14  consider this action.  Specifically, defendant does not dispute any of plaintiff's factual assertions

15  or make any objections the evidence presented in support of those assertions.  Nor does

16  defendant present any arguments regarding those facts/evidence in her opposition to plaintiff's

17  motion for summary judgment.  Finally, defendant fails to submit or cite to any evidence

18  contrary to plaintiff's evidence.  *See* L.R. 260(b); Dckt. No. 34 at 12, n.6.  Defendant states in

19  her opposition that "[a]ll statements on the submitted proffered, and the re-submitted admitted

20  EXHIBITS OF LAW remain un-refuted, apparently standing now as *stare decisis* facts of law."

21  Dckt. No. 58 at 15.  It is unclear what defendant means by this statement, but she does not appear

22  to be challenging any of the evidence or exhibits submitted by plaintiff.  Further, defendant

23  argues that plaintiff lacks evidence as to plaintiff's standing, *see e.g.*, Dckt. No. 58 at 16, but

24  notably does not argue that plaintiff lacks evidence as to plaintiff's underlying claims.

25       Defendant's failure to present any meaningful basis to dispute plaintiff's factual

26  assertions and evidence (or any arguments regarding those facts/evidence) parallels her similar

1  failure to do so in opposition to plaintiff's motion for a preliminary injunction.  Indeed, at the

2  hearing on plaintiff's preliminary injunction motion, defendant was specifically afforded the

3  opportunity present anything that she wanted to add or underscore.  Dckt. No. 37 at 2, 3.  She

4  simply argued that the statutes plaintiff relies upon do not cover tax preparers.  She made no

5  arguments regarding plaintiff's factual representations.  *Id.* at 3-4.  Thereafter, the court noted

6  that there appears "to be purely legal issues" in dispute, *id.* at 6, and defendant did not challenge

7  that statement.

8       Defendant's answer to the complaint does deny some of the plaintiff's allegations, but in

9  conjunction with several of the denials, she states: "Denied. Claimed to be Plaintiff advances a

10  claim without elements of proof."  It is unclear whether those denials are, in fact, denials or

11  whether they are assertions that plaintiff has not met its burden of proof.  Additionally, Rule 56

12  does not permit defendant to respond to plaintiff's evidence with mere references to her answer.

13  The rule specifically provides that a party opposing summary judgment "may not rely merely on

14  allegation or denials in its own pleading; rather, its response must – by affidavits or as otherwise

15  provided in this rule – set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P.

16  56(e)(2).  Defendant's answer was not made under oath and therefore is not equivalent to an

17  affidavit and defendant has not presented any other evidence to dispute the material facts here.

18       Instead, defendant argues that (1) the undersigned does not have authority to issue orders

19  or findings and recommendations in this case, (2) that neither plaintiff nor the court has "ratified

20  the commencement" of this action, and (3) that the statutes upon which plaintiff relies do not

21  authorize injunctive relief against defendant.  Dckt. No. 58.

22       Defendant's first argument, that the undersigned is without authority to issue findings

23  and recommendations is without merit.  A magistrate judge's authority derives from 28 U.S.C.

24  §§ 631 *et seq.*[2]

25

26    [2]  The undersigned was appointed a full-time United States Magistrate Judge by the
judges of the Eastern District of California, pursuant to 28 U.S.C. §§ 631 *et seq.  See* E.D. Cal.

1    Defendant's second argument, that plaintiff's complaint should be dismissed because the

2    United States is not a proper plaintiff under Federal Rule of Civil Procedure ("Rule") 17 and

3    neither plaintiff nor the court has "ratified the commencement" of this action is also without

4    merit.  Rule 17(a) provides that "[a]n action must be prosecuted in the name of the real party in

5    interest" and that "[w]hen a federal statute so provides, an action for another's use or benefit

6    must be brought in the name of the United States."  Rule 17(b) provides that "[t]he court may not

7    dismiss an action for failure to prosecute in the name of the real party in interest until, after an

8    objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be

9    substituted into the action.  After ratification, joinder, or substitution, the action proceeds as if it

10   had been originally commenced by the real party in interest."  Although defendant contends that

11   the United States is not the proper plaintiff and that therefore the complaint should be dismissed

12   because neither plaintiff nor the court has "ratified the commencement" of the action, the statutes

13   at issue herein specifically authorize injunctive relief by United States District Courts "at the

14   instance of the United States," 26 U.S.C. § 7402(a), and/or via "[a] civil action in the name of the

15   United States," 26 U.S.C. §§ 7407,  7408.  *See also* Dckt. No. 22 at 2, n.3 ("The court notes that

16   one basis identified by defendant for seeking dismissal, that she cannot discern identity of the

17   plaintiff because the United States used capital letters in the caption and omitted the words "of

18   America" when it identified the attorneys for the government, is patently frivolous.  Including

19   wholly frivolous arguments in briefs on motions violates Rule 11.  Similarly, there appears to be

20   little doubt as to subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1340 and

21   1345, and 26 U.S.C. §§ 7402(a), 7407, and 7408, or that defendant's California residency, her

22   operation of a tax business in California, and the personal service of process upon her (Dckt. No.

23   4) are sufficient to establish personal jurisdiction.  Fed. R. Civ. P. 4(e)(2)(B).").

24   ////

25

26   General Order 448 (Aug. 21, 2006); Dckt. No. 41-2.

Finally, for the reasons explained in greater detail below, the court finds that defendant's statutory interpretation arguments are also without merit.

A.      Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Summary judgment avoids unnecessary trials in cases with no genuinely disputed material facts.  *See N.W. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).  At issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, Rule 56 serves to screen the latter cases from those which actually require resolution of genuine disputes over material facts; e.g., issues that can only be determined through presentation of testimony at trial such as the credibility of conflicting testimony over facts that make a difference in the outcome. *Celotex*, 477 U.S. at 323.

If the moving party meets its initial responsibility, the opposing party must establish that a genuine issue as to any material fact actually does exist.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To overcome summary judgment, the opposing party must demonstrate a factual dispute that is both material, i.e. it affects the outcome of the claim under the governing law, *see Anderson*, 477 U.S. at 248; *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and genuine, i.e., the evidence is

such that a reasonable jury could return a verdict for the nonmoving party.  *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).   In attempting to establish the existence of a factual dispute that is genuine, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  *See* Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n.11.

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  *See Anderson*, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  *See Matsushita*, 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (citation omitted).

B.     Facts

Based on the pleadings and evidence on file in this action, the court finds the following facts to be undisputed.  This action has been requested by the Chief Counsel of the Internal Revenue Service, a delegate of the Secretary of the Treasury, and commenced at the direction of a delegate of the Attorney General under 26 U.S.C. §§ 7402, 7407, and 7408.  Defendant Teresa Marty resides in Pollock Pines, California, and does business in Placerville, California, as Advanced Financial Services, LLC, preparing tax returns for others in exchange for

////

compensation.  Pl.'s Statement of Undisputed Facts ("SUF") ¶¶ 1, 3.[3]  Defendant identifies herself as a Certified Wealth Preservation Planner ("CWPP") and Certified Asset Protection Planner ("CAPP") and is an Enrolled Agent licensed with the State of California.  SUF ¶ 3.

In 2008 and 2009, defendant, individually and doing business as Advanced Financial Services, LLC, prepared and filed fraudulent tax returns (IRS Form 1040) for the tax years 2007 and 2008 and fraudulent amended tax returns (IRS Forms 1040X) for previous years, and prepared and filed with the IRS other frivolous documents on behalf of others in exchange for compensation.  SUF ¶¶ 4-6.  Defendant promotes a tax-fraud scheme that involves filing fraudulent tax returns and other frivolous documents with the IRS on behalf of her customers.  SUF ¶¶ 4-9.

The returns defendant prepares for others fabricate the amount of tax withheld on behalf of her customers.  The fabricated tax withholding reported to the IRS on her customers' returns results in fraudulent refund claims by her customers in amounts as large as $2.7 million per customer.  SUF ¶¶ 9, 11, 27.  In support of these fraudulent refund claims, defendant prepares and files with the IRS false Forms 1099-OID, which are used to report Original Issue Discount income[4] (and any federal tax withheld on that income).  SUF ¶¶ 9, 11, 27.

The Forms 1099-OID that defendant submits with the returns she prepares falsely state that her customer issued a debt instrument that generated OID or that her customer purchased a debt instrument that generated OID, and falsely state that federal income taxes were withheld for the full amount of OID purportedly paid or received by her customer.  SUF ¶¶ 9, 10, 12, 27.  The frivolous IRS Forms 1099-OID submitted with returns prepared by defendant are purportedly issued or received by her customer to or from a creditor of the customer, usually a credit card

---

[3] All citations to the Statement of Undisputed Facts herein incorporate by reference those citations to the evidence identified in the SUF in support of each undisputed fact.

[4] As stated above, "Original Issue Discount" income is a reportable form of taxable interest based on the difference between the maturity and issuance prices of a debt instrument.

company or a mortgage company.  The amount of the false "original issue discount" reported on the tax forms appears to be in an amount needed to satisfy a debt (usually a mortgage, car loan, or credit card debt) owed by the customer to the creditor.  The IRS Forms 1099-OID submitted with the returns defendant prepares also report tax withholding for the full amount of the fraudulent "original issue discount."  SUF ¶¶ 9, 10, 12, 27.

Defendant then claims the total amount of the false "original issue discount" and false withholding on the customer's IRS Form 1040.  The result of this is an inflated tax liability for the customer, but with a huge false refund claim, oftentimes exceeding $200,000.  One of the returns defendant prepared for a customer included a fraudulent refund claim in the amount of $2.7 million for the tax year 2007.  SUF ¶¶ 15, 24, 27, 29, 30, 31.  Consequently, defendant's customers fail to file proper federal income tax returns and falsely claim tax refunds to which they are not entitled.  SUF ¶¶ 27, 29, 30, 31.

The apparent purpose of defendant's frivolous IRS Forms 1040 and 1099-OID is to request fraudulent refunds by accessing a non-existent treasury account.  SUF ¶ 10.  In reality, defendant's scheme fraudulently reports that tax was withheld on behalf of her customers and then claims refunds of that tax.  Thus, the ploy is based on fraudulent claims to refunds of the non-existent withholding.  SUF ¶¶ 6-10, 12, 27, 29-31.

The returns that defendant submits on behalf of her customers falsely claim that the customer withheld the total amount listed on a Form 1099-OID, which fraudulently reflects the total amount of debt the customer owes to his/her creditor(s).  SUF ¶¶ 12.  The IRS has identified approximately 110 returns that defendant prepared and filed in 2008 that utilize Forms 1099-OID to generate fraudulent refund claims.  These fraudulent forms generally report that the full amount of the OID was withheld and the OID was purportedly generated from checking accounts, vehicle loans, credit card debt/line of credit, and/or mortgage loans.  SUF ¶¶ 12, 30.

For example, in 2008, defendant prepared a 2007 Form 1040X (amended return) for Marion and Pamela Harris, for the purpose of reporting Form 1099-OID income that was not

included on their original 2007 Form 1040.  Marion and Pamela Harris listed their occupation on their amended 2007 return as "authorized representatives."  On the Harrises' amended 2007 return that defendant prepared, she reported $620,000 of "other income" (Line 21) that was purportedly a result of OID paid to the Harrises in 2007.  Defendant falsely claimed that the full amount of the OID was withheld for federal taxes.  SUF ¶¶ 13-16.

On the Form 1099-OID attached to Marion and Pamela Harris' amended 2007 Form 1040X, Marion Harris is listed as the payer of the original-issue discount (OID) resulting from a debt instrument titled "promissory note."  According to the 1099-OID, Harris paid original-issue discount in the amount of $620,000 to Wells Fargo Bank, of which $620,000 in federal income tax was withheld.  According to the false Form 1099, the recipient of the OID and beneficiary of the withheld tax was Wells Fargo Bank, not Marion Harris.  SUF ¶¶ 15.  Even if one assumes the Form 1099-OID issued by Marion Harris to Wells Fargo was legitimate, defendant improperly included $620,000 of income and withholding on the Harrises' amended 2007 federal income tax return.  SUF ¶¶ 13-15.  Submitted along with the Harrises' amended 2007 federal income tax return was a false Form 56, "Notice Concerning Fiduciary Relationship," that falsely names Henry Paulson ("dba Secretary of the Treasury and any and all successors") as the customers' fiduciary debtor.  SUF ¶¶ 16.

Another example is defendant's filing, in 2008, of a 2007 Form 1040 for Charles and Kathleen Barrett of Hotchkiss, Colorado.  Defendant claimed a fraudulent refund request on the Barretts' 2007 federal income tax return in the amount of $217,615.  This fraudulent refund request was based on fabricated withholding reported on Forms 1099-OID that defendant prepared for the Barretts, wherein she falsely stated that the Barretts issued OID to several of their creditors.  This fabricated OID was then reported as income on the Barretts' 2007 Form 1040, which falsely reported that the full amount of the OID was withheld for federal income taxes.  SUF ¶¶ 17-22.  Defendant sent a document to the Barretts to explain how her scheme worked, and which included the following claims: (1) A person may use a Form 1099-OID to

obtain a tax refund for the amount that person has paid on his/her mortgage, car loans, insurance, utilities, medical bills, and tuition expenses; (2) A person may satisfy his/her tax liabilities by filing IRS Forms 1099, 1096, 1040V, and 1040, which grant a person access to his/her treasury account that was funded at his/her birth; (3) The value of a person's treasury account is based upon a person's birth weight in gold times an unknown multiplier; (4) Wages are not included in a person's taxable income; (5) A person may satisfy a debt to a private creditor by issuing a Form 1099-OID for the amount of the debt to the creditor; if a creditor does not honor the Form 1099-OID, that creditor has committed sedition; and (6) IRS notices to taxpayers for unpaid tax liabilities are in actuality attempts to give that taxpayer a refund.  SUF ¶¶ 10, 18-19.

Of the approximately 110 returns prepared and/or filed by defendant in 2008 that request refunds based on fraudulent Forms 1099-OID, many fraudulently request refunds in excess of $200,000, and one return requests a refund of $2.7 million.  The total amount of refunds requested on those 110 returns is approximately $26.2 million.  SUF ¶ 30.  As of February 11, 2009, defendant had prepared at least 24 federal income tax returns in 2009.  Of these 24 returns, 14 contain fraudulent refund requests based on frivolous IRS Forms 1099-OID.  SUF ¶ 31.

Defendant's fraudulent tax return preparation has resulted in the IRS's issuance of at least $6.9 million in erroneous payments to her customers.  SUF ¶ 29.  In addition to the lost revenue due to the issuance of erroneous refunds, the government has incurred the expense of conducting the investigation of defendant's tax preparation services, and responding to and processing the frivolous documents she has filed or caused filed with the IRS.  SUF ¶ 32.  The false Forms 1099-OID submitted with the returns of defendant's customers may result in the assessment of erroneous penalties against creditors identified in the false Forms 1099-OID for failing to timely submit those forms to the IRS.  *Id*.  The fraudulent returns that defendant has prepared and filed may result in the issuance of erroneous notices of federal tax liens or levies and tax deficiencies to public officials identified in defendant's documents.  *Id*.

////

1    However, defendant continues to insist that her method of preparing tax returns is correct.  SUF

2    ¶ 33; Dckt. No. 13 at 2.

3        C.    Analysis

4            1.    Permanent Injunction Under Internal Revenue Code § 7407

5        Plaintiff seeks summary judgment and a permanent injunction under 26 U.S.C. § 7407.

6    Section 7407(a) provides that, at the request of the Secretary, a civil action may be commenced

7    in the name of the United States "to enjoin any person who is a tax return preparer from further

8    engaging in any conduct described in [§ 7407(b)] or from further acting as a tax return preparer."

9    26 U.S.C. § 7407(a).  A court may issue an injunction under § 7407(b) if it finds "(1) that a tax

10   return preparer has – (A) engaged in any conduct subject to penalty under section 6694 or 6695,

11   or subject to any criminal penalty provided by this title, . . . or (D) engaged in any other

12   fraudulent or deceptive conduct which substantially interferes with the proper administration of

13   the Internal Revenue laws, and (2) that injunctive relief is appropriate to prevent the recurrence

14   of such conduct."  Id. § 7407(b).

15       "If the court finds that a tax return preparer has continually or repeatedly engaged in any

16   conduct described in subparagraphs (A) through (D) of [§ 7407] and that an injunction

17   prohibiting such conduct would not be sufficient to prevent such person's interference with the

18   proper administration of this title, the court may enjoin such person from acting as a tax return

19   preparer."  Id. § 7407(b).  "The traditional requirements for equitable relief need not be satisfied

20   since [the statute] expressly authorizes the issuance of an injunction."  Id. (citing Trailer Train

21   Co. v. State Bd. of Equalization, 697 F.2d 860, 869 (9th Cir.), cert. denied, 464 U.S. 846 (1983);

22   United States v. Buttorff, 761 F.2d 1056, 1059 (5th Cir.1985)); see also United States v. Bailey,

23   789 F. Supp. 788, 812 (N.D. Tex. 1992).  "Factors that a court may consider in determining the

24   likelihood of future [statutory] violations and, thus, the need for an injunction include: (1) the

25   gravity of the harm caused by the offense; (2) the extent of the defendant's participation; (3) the

26   defendant's degree of scienter; (4) the isolated or recurrent nature of the infraction; (5) the

defendant's recognition (or non-recognition) of his own culpability; and (6) the likelihood that defendant's occupation would place him in a position where future violations could be anticipated." *United States v. Estate Pres. Servs.*, 202 F.3d 1093, 1098 (9th Cir. 2000).

Section 6694 provides a penalty for tax preparers who understate a taxpayer's liability without substantial authority for doing so, when the tax preparer knew (or reasonably should have known) that there was no proper authority for doing so. *Id.* § 6694. Here, there is no genuine issue of material fact regarding whether defendant was an income tax preparer[5] and engaged in conduct subject to penalty under § 6694 by repeatedly preparing and filing federal tax returns that understated her customers' tax liabilities based on fraudulent claims, without substantial authority for doing so, when she knew (or should have known) that she did not have authority to do so. Although defendant continues to insist that her outlandish method of preparing tax returns is legally correct, her scheme lacks any support under the Internal Revenue Code, case law, or any other authority. *See United States v. Hill*, 2005 WL 3536118, at *4 (D. Ariz. Dec. 22, 2005) ("Defendants knew that the IRS considered their position frivolous and that there was no realistic possibility that it would be sustained."); *United States v. Kahn*, 2004 WL 1089116, at *1 (Mar. 30, 2004 M.D. Fla.) (holding defendants in contempt of injunction arising from defendants' promotion of abusive tax schemes including "outlandish mechanisms" such as using counterfeit bonds and checks to draw on fictitious treasury accounts supposedly in their customer's name).

There is also no genuine issue of material fact regarding whether defendant engaged in fraudulent or deceptive conduct which substantially interfered with the proper administration of the Internal Revenue laws. Unrefuted evidence demonstrates that she prepared over a hundred tax returns claiming more than $26 million in refunds based on fraudulent representations of tax withholdings that never occurred; her tax return preparation has resulted in the IRS's issuance of

---

[5] Defendant identifies herself as a Certified Wealth Preservation Planner and Certified Asset Protection Planner and is an Enrolled Agent licensed with the State of California.

at least $6.9 million in erroneous payments to her customers; and in addition to the lost revenue due to the issuance of erroneous refunds, the government has incurred the expense of conducting the investigation of defendant's tax preparation services, and responding to and processing the frivolous documents she has filed or caused to be filed with the IRS.  Therefore, the court finds that plaintiff is entitled to summary judgment and a permanent injunction against defendant pursuant to 26 U.S.C. § 7407.

The court further concludes that defendant has continually and repeatedly engaged in the conduct described above; that an injunction prohibiting only that conduct would not be sufficient to prevent defendant's interference with the proper administration of the IRC; and that defendant should therefore be enjoined from acting as a tax return preparer.  Defendant's continued and repeated frivolous filings have caused significant harm to the government by impeding the ability of the IRS to administer tax laws and by placing significant administrative and financial burdens on the IRS; may result in the assessment of erroneous penalties against creditors; and may result in the issuance of erroneous notices of federal tax liens or levies and tax deficiencies to public officials identified in defendant's documents.[6]  Defendant actively participated in the preparation and filing of such frivolous tax returns; prepared and filed over 100 such fraudulent tax returns; continues to hold the erroneous belief that her method of tax preparation is lawful; and is still in a position to prepare tax returns that fraudulently claim refunds on behalf of her customers.  *See United States v. Estate Pres. Servs.*, 202 F.3d at 1098; *United States v. Nordbrock*, 38 F.3d 440, 447 (9th Cir. 1994); *United States v. Savoie*, 594 F. Supp. 678, 685 (W.D. La. 1984) ("[I]n light of Savoie's unyielding opposition to the current tax structure, we hardly need to explain that an injunction against conduct listed in subsection (b)(1) would be insufficient to safeguard tax administration from Savoie's interference.").

////

---

[6] That harm continues in these proceeding as the government has had to expend time and legal resources responding to defendant's patently frivolous legal arguments.

2.      Permanent Injunction Under Internal Revenue Code § 7408

Plaintiff also seeks summary judgment and a permanent injunction under 26 U.S.C. § 7408.  Injunctive relief is warranted under § 7408 "if the court finds – (1) that [defendant] has engaged in any specified conduct, and (2) that injunctive relief is appropriate to prevent recurrence of such conduct."  26 U.S.C. § 7408(b).  "Specified conduct" is defined as "any action, or failure to take action, which is – (1) subject to penalty under section 6700, 6701, 6707, or 6708, or (2) in violation of any requirement under regulations issued under section 330 of title 31, United States Code."  *Id.* § 7408(c).

Section 6700 imposes penalties on any person who:

> (1) organized or sold, or participated in the organization or sale of, an entity, plan, or arrangement;
> (2) In connection therewith made or caused to be made false or fraudulent statements concerning the tax benefits to be derived from the entity, plan, or arrangement;
> (3) knew or had reason to know that the statements were false or fraudulent; and
> (4) the false or fraudulent statements pertained to a material matter.

*Id.* § 6700.  "The government must prove five elements to obtain an injunction under [Sections 6700 and 7408]: (1) the defendants organized or sold, or participated in the organization or sale of, an entity, plan, or arrangement; (2) they made or caused to be made, false or fraudulent statements concerning the tax benefits to be derived from the entity, plan, or arrangement; (3) they knew or had reason to know that the statements were false or fraudulent; (4) the false or fraudulent statements pertained to a material matter; and (5) an injunction is necessary to prevent recurrence of this conduct."  *United States v. Estate Pres. Servs.*, 202 F.3d 1093, 1098 (9th Cir. 2000) (citing I.R.C. §§ 6700(a), 7408(b)).  "[T]he definition of a plan for purposes of § 6700 is broad" and includes tax protesters' activities.  *United States v. Benson*, 561 F.3d 718, 722 (7th Cir. 2009); *United States v. Raymond*, 228 F.3d 804, 811 (7th Cir. 2000) ("any 'plan or arrangement' having some connection to taxes").  "Reason to know" is determined by "what a reasonable person in the [defendant's] . . . subjective position would have discovered," and

"allows imputation of knowledge so long as it is commensurate with the level of comprehension required by the speaker's role in the transaction." *Estate Pres. Servs.*, 202 F.3d at 1103. "For example, the legislative history states, 'a salesmen would ordinarily be deemed to have knowledge of the facts revealed in the sales materials furnished to him by the promoter.'" *United States v. Harkins*, 355 F. Supp.2d 1175, 1180 (D. Or. 2004) (citing H.R. Conf. Rep. 97-760, at 562)).

Here, there is no genuine dispute that defendant made or caused to be made, false or fraudulent statements concerning the tax benefits to be derived from a plan or arrangement in which she participated and which she promoted; she knew or had reason to know that the statements she was making were false or fraudulent; the false or fraudulent statements pertained to a material matter; and an injunction is necessary to prevent recurrence of this conduct.  In promoting her tax preparation business and in conversations with her customers, defendant made numerous false statements with respect to the use of Forms 1099-OID and material matters under the IRC, and falsely promised her customers that she could obtain larger tax refunds from the government.  She knew or had reason to know that her statements were false because the basis for her claims have been repeatedly rejected by the courts and the IRS.  Also, as noted above, defendant identifies herself as a Certified Wealth Preservation Planner and Certified Asset Protection Planner and is an Enrolled Agent licensed with the State of California.  *See Harkins*, 355 F. Supp. at 1179-80 (finding that a scheme which claimed that persons could establish "corporations sole" for any purpose, assign income to that corporation, and then deduct payments to the corporation on their individual tax returns "qualifies as a plan and/or arrangement under IRC § 6700"; that defendant made false and fraudulent statements when promoting that scheme; that defendant knew or had reason to know that the statements were false in light of defendant's disruptive tactics throughout the lawsuit and uncooperation with plaintiff's counsel; and that the statements were material because they related "directly to the exclusion of income from federal taxation"); *United States v. Rivera*, 2003 WL 22429482, at *6

16

1   (C.D. Cal. July 18, 2003) ("Even cursory research would reveal that his 'opinions' - that

2   private-sector employees are exempt from federal taxation, that the IRS has no authority to

3   assess and collect taxes, and that paying taxes is voluntary - are without merit and have been

4   universally rejected by the courts."); *see also* 26 U.S.C. § 1275 (identifying legitimate financial

5   transaction that generate OID); *Biermann v. Commissioner*, 769 F.2d 707 (11th Cir. 1985)

6   (rejecting tax protestor's arguments that wages are not income, that he is not subject to

7   withholding taxes, and that he is not liable for tax as "patently frivolous" and "warrant[ing] no

8   further discussion.").  In light of defendant's failure to refute these facts, there is no genuine

9   issue of material fact regarding whether she engaged in conduct which is subject to penalty

10   under § 6700.[7]

11       An injunction under § 7408 is necessary to prevent a recurrence of defendant's violations

12   of § 6700.  *See United States v. Estate Pres. Servs.*, 202 F.3d at 1098.  As noted above,

13   defendant's fraudulent conduct has caused significant harm to the government, her clients, and

14   the public; she actively participated in the preparation and filing of the frivolous tax returns; she

15   prepared and filed over 100 such fraudulent tax returns; she continues to hold the erroneous

16   belief that her method of tax preparation is lawful; and she is still in a position to prepare tax

17   returns that fraudulently claim refunds on behalf of her customers.  Therefore, plaintiff is entitled

18   to summary judgment on its claim for a permanent injunction against defendant pursuant to

19   § 7408.

20   _____

21       [7] Defendant's conduct also likely subjects her to penalty under § 6701.  Section 6701
     imposes penalties on any person who prepares or assists in the preparation of "any portion of a
22   return, affidavit, claim, or other document" that he or she "knows (or has reason to believe) will
     be used in connection with any material matter" under the Internal Revenue Code and that he or
23   she knows will "result in an understatement of the liability for tax." *Id.* § 6701.  Here,
     defendant's arguments suggest that while she stubbornly refuses to accept the tax laws, she knew
24   that the tax returns she prepared and filed would be used in connection with a material matter
     under the IRC and it is very likely she knew the fraudulent returns would result in an
25   understatement of her clients' tax liabilities.  *See United States v. Rivera*, 2003 WL 22429482, at
     *8.  Nonetheless, because plaintiff has presented sufficient evidence that defendant violated
26   § 6700, and is therefore entitled to an injunction under § 7408, this issue need not be decided.
     *See United States v. Lloyd*, 2005 WL 3307281, at *6, n.7 (M.D.N.C. Dec. 6, 2005).

3.    <u>Permanent Injunction Under Internal Revenue Code § 7402</u>

Finally, plaintiff seeks summary judgment and a permanent injunction under 26 U.S.C. § 7402.  Section 7402(a) provides that "[t]he district courts of the United States at the instance of the United States shall have such jurisdiction to make and issue in civil actions, writs and orders of injunction, . . . and such other orders and processes, and to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws.  The remedies hereby provided are in addition to and not exclusive of any and all other remedies of the United States in such courts or otherwise to enforce such laws."  26 U.S.C. § 7402(a).

Here, there is no genuine issue of material fact as to whether defendant has interfered with the administration and enforcement of the internal revenue laws by promoting her tax-fraud scheme and filing frivolous federal tax returns and other documents on behalf of her customers.  As a result of defendant's misconduct, her customers have failed to file proper tax returns, erroneous refunds for hundreds of thousands of dollars have been issued to her customers, and her customers are liable for substantial penalties as a result of their fraudulent refund claims.  Defendant's insistence that her conduct is proper also suggests a strong likelihood that she will continue to engage in the misconduct absent an injunction.  Therefore, the undersigned recommends that plaintiff's motion for summary judgment on this claim be granted and defendant be permanently enjoined from preparing tax returns for others and from engaging in conduct subject to penalty under the IRC.[8]  *See United States v. Thompson*, 395 F. Supp.2d 941, 946 (E.D. Cal. 2005); *Harkins*, 355 F. Supp.2d at 1181; *Rivera*, 2003 WL 22429482, at *8;

---

[8]  Even considering the four equitable injunction factors, plaintiff is still entitled to this permanent injunction.  Defendant has caused plaintiff substantial and immediate irreparable injury since her fraudulent returns have resulted in the IRS's issuance of at least $6.9 million in erroneous payments to her customers and the government will likely not be able to recoup all of the money fraudulently paid to those customers.  *See Lloyd*, 2005 WL 3307281, at *7.  Additionally, plaintiff "has no adequate remedy at law to address the substantial and immediate irreparable harm [defendant] is causing.  Apart from an injunction, the United States has no means, civilly, of stopping [defendant]."  *Rivera*, 2003 WL 22429482, at *8; *see also Harkins*, 355 F. Supp. 2d at 1181.

*Lloyd*, 2005 WL 3307281, at *7-8.  The undersigned also recommends that defendant be ordered to provide her customers with a copy of the permanent injunction order.  *See United States v. Cohen*, 222 F.R.D. 652, 659 (W.D. Wash. 2004) (ordering tax-return preparer to notify customers and produce customer list to United States as part of preliminary injunction); *United States v. Stephenson*, 313 F. Supp. 2d 1054, 1061 (W.D. Wash. 2004) (same); *United States v. Kahn*, 2004 WL 1089116, at *1 (M.D. Fla. Mar. 30, 2004) (noting requirement that defendants produce customer lists to the government and prominently display on their website a copy of the injunction).

III.    UNDERLINE MOTION FOR RECONSIDERATION

On July 29, 2009, the undersigned issued findings and recommendations herein which recommended that plaintiff's motion for a preliminary injunction be granted.  Dckt. No. 34.  The findings and recommendations provided a ten day objection period.  *Id.* at 11.  On August 6, 2009, defendant filed a"Specific Affidavit of Negative Averment, Opportunity to Cure, and Counterclaim."  The point of that filing is unclear.  On August 11, 2009, defendant filed objections to the findings and recommendations and a request for judicial notice; and on August 27, 2009, defendant filed a notice of fault and demand for payment.  Dckt. Nos. 36, 38, 39, 44.  Although defendant's answer plainly did not include any counterclaims, plaintiff apparently interpreted defendant's notice of default and demand for payment as such a claim and filed a motion to dismiss it.  Dckt. No. 42.

On August 31, 2009, the district judge adopted the July 29, 2009 findings and recommendations.  Dckt. No. 45.  In doing so, the district judge construed the August 6 Affidavit and Counterclaim, the August 11 request for judicial notice, and the August 11 objections to the findings and recommendations  "as objections to the magistrate judge's findings and recommendations" and stated that each was "duly considered" by the district judge.  *Id.*  The district judge then denied plaintiff's motion to dismiss defendant's counterclaim as moot.  *Id.* at 2.

1    On October 22, 2009, defendant sent a letter to the court stating: "I have not given

2    permission for my Counterclaim to be ignored or dismissed.  The Counterclaim was filed into

3    the Court [on] August 6, 2009."  Dckt. No. 59.  The undersigned recommends that the October

4    22 letter be construed as a request for reconsideration of the August 31 order, and that it be

5    denied.

6    As an initial point, the request does not meet the requirements set forth in Local Rule

7    230(j).  That rule provides that when a motion for reconsideration is filed, the party seeking

8    reconsideration shall submit "an affidavit or brief, as appropriate, setting forth the material facts

9    and circumstances surrounding each motion for which reconsideration is sought, including: (1)

10   when and to what Judge or Magistrate Judge the prior motion was made; (2) what ruling,

11   decision, or order was made thereon; (3) what new or different facts or circumstances are

12   claimed to exist which did not exist or were not shown upon such prior motion, or what other

13   grounds exist for the motion; and (4) why the facts or circumstances were not shown at the time

14   of the prior motion."  Defendant's October 22 letter does not set forth any argument regarding

15   why the decision to construe the counterclaim as objections to the findings and recommendations

16   should be reconsidered.  For that reason alone, the request should be denied.  Nonetheless, even

17   if defendant's request for reconsideration were procedurally proper, it would still be denied.

18   Defendant's supposed "counterclaim" was ineffective.  It was not included in her answer and she

19   did not request leave to amend her answer to add it.  *See* Fed. R. Civ. P. 13 and 15.  Therefore, it

20   was proper to disregard the counterclaim and construe the August 6 filing as an objection to the

21   findings and recommendations.

22   IV.    IFP APPLICATION

23   On September 16, 2009, defendant filed an application to proceed in this action *in forma*

24   *pauperis* pursuant to 28 U.S.C. § 1915, stating that she is unable to pay the costs of these

25   proceedings.  Dckt. No. 51.  Presumably, defendant seeks to proceed *in forma pauperis* on

26   appeal.

1    An *in forma pauperis* applicant need not be absolutely destitute to qualify for a waiver of

2    costs and fees, but must demonstrate that because of her poverty, she cannot meet court costs and

3    still provide herself and her dependents with the necessities of life. *Adkins v. E.I. DuPont de*

4    *Nemours & Co.*, 335 U.S. 331, 339 (1948).  The determination whether a plaintiff is indigent,

5    and thus unable to pay the filing fee, falls within the district court's reasonable discretion.

6    *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990).  "[P]ermission to proceed in forma

7    pauperis is itself a matter of privilege and not right; denial of in forma pauperis status does not

8    violate the applicant's right to due process." *Franklin v. Murphy*, 745 F.2d 1221, 1231 (9th Cir.

9    1984) (citation omitted).  "[T]he same even-handed care must be employed to assure that federal

10   funds are not squandered to underwrite, at public expense . . . the remonstrances of a suitor who

11   is financially able, in whole or in material part, to pull his own oar." *Temple v. Ellerthorpe*, 586

12   F. Supp. 848, 850 (D.R.I. 1984) (citation omitted).

13   Plaintiff's application for *in forma pauperis* status states that she is not currently

14   employed, has not received any money from her "business, profession or other self-employment"

15   or from any other source in the past twelve months.  Dckt. No. 51.  She further states that she has

16   $300.00 in a "cash or checking or savings account"; that she owes approximately $315,000 on a

17   home worth approximately $300,000; and that she owes $20,000 on a Toyota Tacoma, $18,000

18   on a Toyota Highlander, and $30,000 on a Plymouth, and has no equity in any of those vehicles.

19   *Id.*  She adds that she is currently dependent on her husband and it is "just the two of [them]."

20   *Id.*

21   On September 29, 2009, plaintiff filed an opposition to defendant's *in forma pauperis*

22   application.  Dckt. No. 53.  Plaintiff argues that "[b]efore granting Marty's motion, the court

23   should require Marty to submit copies of her and her husband's tax returns to the court and

24   detailed financial statements from her tax preparation business, Advanced Financial

25   Services, LLC, her husband, and any other business she controls or from which she benefits."

26   *Id.*  Plaintiff contends that defendant's statement that she has not received any money from a

1  "business, profession or other self-employment" in the past twelve months is "not believable" in

2  light of the evidence that, *inter alia*, defendant charged clients $1375 to prepare tax forms and

3  defendant prepared at least 110 tax returns in 2008 and 2009.  *Id.*

4          On October 6, 2009, defendant filed a reply to plaintiff's opposition.  Dckt. No. 55.  In

5  her reply, defendant acknowledges that the statement in her affidavit that she had not received

6  any money from a "business, profession or other self-employment" "was made in error in the

7  exigency of the moment to file the Application before time ran out and was not fully understood

8  as to the dates the Application was asking for."  *Id.* at 2.  Defendant states that her income stream

9  was terminated after the IRS searched and seized her electronic records and client files; that

10  Advanced Financial Services has significant monthly overhead expenses; that the expenses of

11  the business exceed the estimate of defendant's earnings that was provided by plaintiff; that

12  many of the refunds which plaintiff states were actually issued were frozen; that during the

13  twelve months preceding defendant's application, she earned $17,500 from Advanced Financial

14  Services; that she has attempted to keep Advanced Financial Services operational using the

15  limited payments from her account receivable and maintain personal living expenses from her

16  savings and credit card accounts which are now seriously depleted or non existent; and that she

17  is currently without reserve funds or an income stream.  *Id.* at 2-4.

18          The court cannot tell from defendant's affidavit and reply brief whether defendant is able

19  to pay or give security for court costs and still be able to provide herself with the necessities of

20  life.  *See Adkins v. E.I. Dupont de Nemours & Co.*, 335 U.S. 331, 339 (1948); *see also Monti v.*

21  *McKeon*, 600 F. Supp. 112, 114 (D. Conn. 1984) ("in ruling on motions to proceed *in forma*

22  *pauperis*, . . . courts have considered the income of interested persons, such as spouses and

23  parents, in evaluating the funds available to the movant. . . .  If the [applicant] is supported by

24  her spouse, and her spouse is financially able to pay the costs of this appeal, it follows that the

25  [applicant's] own lack of funds will not prevent her from gaining access to the courts.").  As she

26  admits, her initial affidavit is inaccurate, and her reply brief conflates her individual expenses

and earnings with the expenses and earnings of her business.  Also, nowhere in either document does defendant provide any information about her husband's income.  Accordingly, defendant is directed to file, within fourteen days of this order, a further affidavit *under oath* containing information regarding her husband's income and whether she is supported by that income, an accounting of her individual monthly expenses, and an accounting of her individual income over the past twelve months.  If defendant fails to file a further affidavit, as directed, or if her affidavit does not provide information enabling the court to determine that she is unable to pay or give security for court costs and still be able to provide herself with the necessities of life, the undersigned will recommend that her application to proceed *in forma pauperis* be denied.

V.    <u>CONCLUSION</u>

Accordingly, it is hereby ORDERED that defendant shall file, within 14 days of this order, a further affidavit *under oath* containing information regarding her husband's income and whether she is supported by that income, an accounting of her individual monthly expenses, and an accounting of her individual income over the past twelve months.

Further, based on the foregoing findings of fact, and the authority of this court pursuant to 26 U.S.C. § 7402, 7407, and 7408, it is hereby RECOMMENDED that:

1.  Plaintiff's motion for summary judgment, Dckt. No. 48, be granted;

2.  Defendant's October 22, 2009 letter, Dckt. No. 59, be construed as a request for reconsideration of the August 31, 2009 order, and be denied;

3.  Defendant Teresa Marty, individually, and doing business as Advanced Financial Services, LLC, and any person or entity acting directly or indirectly in concert with defendant and/or her business, be immediately and permanently enjoined from engaging in the following conduct:

A.  Acting as a federal tax return preparer; preparing or filing for other persons or entities any federal tax returns, amended returns, or other tax forms; providing any federal tax forms to other persons or entities, and notarizing or signing any federal tax forms,

certificates of service or similar documents, on behalf of, or submitted by, other persons or entities; advising any other person or entity concerning federal tax matters; and representing any other person or entity before the IRS;

  B. Organizing, promoting or selling any abusive tax shelter, plan or arrangement that advises or assists taxpayers to understate or evade the assessment or collection of their correct federal tax, or is otherwise premised on any deceptive, fraudulent or false representation;

  C. Making any deceptive, fraudulent or false claim, including any understatement of liability or reliance on an abusive tax shelter, in her own federal income tax return, amended return or upon any other federal tax form; and

  D. Engaging in any activity that is subject to penalty under the Internal Revenue Code or that substantially interferes with the proper administration and enforcement of the internal revenue laws.

  4. Defendant Teresa Marty also be required to:

  A. Within 45 days of the filing date of this order, provide to counsel for the United States a complete list of all persons and entities who have purchased any tax product, service or advice from defendant within the past three years;

  B. Within 45 days of the filing date of this order, send an executed copy of the court's permanent injunction to all persons who have purchased any products, services or advice associated with the false or fraudulent tax scheme described in this complaint within the past three years, along with a  cover letter in a form either agreed to by counsel for the United States or approved by the Court, and within 14 days thereafter, file with the court a sworn certificate stating that she has complied with this requirement; and

  C. Within 30 days of the filing date of this order, remove all content from her websites and replace that content with a copy of the court's permanent injunction for a period of three years.

////

1    These findings and recommendations are submitted to the United States District Judge

2    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

3    after being served with these findings and recommendations, any party may file written

4    objections with the court and serve a copy on all parties.  Such a document should be captioned

5    "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

6    within the specified time may waive the right to appeal the District Court's order. *Turner v.*

7    *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

8    DATED:  January 13, 2010.

9                                    EDMUND F. BRENNAN

10                                   UNITED STATES MAGISTRATE JUDGE